COPY

1   BONNETT, FAIRBOURN,
        FRIEDMAN & BALINT, P.C.
2   ANDREW S. FRIEDMAN (AZ005425)
    ELAINE A. RYAN (AZ 012870)
3   PATRICIA N. SYVERSON (CA 203111; AZ 020191)
    2901 N. Central Avenue, Suite 1000
4   Phoenix, AZ 85012-3311
    Telephone: 602/274-1100
5   602/798-5860 (fax)
    afriedman@bffb.com; eryan@bffb.com; psyverson@bffb.com
6
    BLOOD HURST & O'REARDON, LLP
7   TIMOTHY G. BLOOD (149343)
    LESLIE E. HURST (178432)
8   THOMAS J. O'REARDON II (247952)
    600 B Street, Suite 1550
9   San Diego, CA 92101
    Telephone: 619/338-1100
10  619/338-1101 (fax)
    tblood@bholaw.com; lhurst@bholaw.com; toreardon@bholaw.com
11
    LAW OFFICES OF CAMERON J.
12    GHARABIKLOU
    CAMERON J. GHARABIKLOU (249189)
13  444 West C Street, Suite 410
    San Diego, CA 92101
14  Telephone: 858/412-0019
    619/568-3341 (fax)
15  cameron@netrootslaw.com
    Attorneys for Plaintiff

16                    UNITED STATES DISTRICT COURT

17                   CENTRAL DISTRICT OF CALIFORNIA

18  MATTHEW CORYELL, on behalf of himself   No.: **CV10 6952** JFW
19  and all others similarly situated,                              (AGRx)
                                             CLASS ACTION
20                    Plaintiff,
                                             CLASS ACTION COMPLAINT FOR:
21          v.
                                             1.   VIOLATIONS OF CONSUMERS
22  PROPHASE LABS, INC., fka THE                  LEGAL REMEDIES ACT, CIVIL CODE
    QUIGLEY CORPORATION, THEODORE                 §1750, ET SEQ.;
23  W. KARKUS, an individual, and ROBERT     2.   VIOLATION OF THE UNFAIR
    V. CUDDIHY, JR. an individual,                COMPETITION LAW, BUSINESS &
24                                                PROFESSIONS CODE §17200, ET SEQ.;
                      Defendants.                 and
25                                           3.   BREACH OF EXPRESS WARRANTY
26
                                             DEMAND FOR JURY TRIAL
27

28

                        CLASS ACTION COMPLAINT
                                    1

1    Plaintiff Matthew Coryell ("Plaintiff") brings this action on behalf of himself, and all others

2  similarly situated against Defendants ProPhase Labs, Inc. ("ProPhase"), formerly known as The

3  Quigley Corporation ("Quigley"), Theodore W. Karkus and Robert V. Cuddihy, Jr. (collectively,

4  "Defendants"), and states:

5  **NATURE OF THE CASE**

6    1.    ProPhase manufactures, markets and sells over-the-counter ("OTC") "cold remedy"

7  lozenges and tablets under the brand name "Cold-EEZE®."  All of the Cold-EEZE® branded

8  products contain zinc.  Throughout its advertising, including on the products' labeling, ProPhase

9  claims that its Cold-EEZE products are "clinically proven" to cut in half the duration of the common

10  cold.  However, Cold-EEZE is not proven to reduce the duration of the common cold, and does not

11  do so.  ProPhase does not have any valid, acceptable studies to support its advertising claims.  To the

12  contrary, various studies on zinc lozenges, including Cold-EEZE lozenges, have shown that the

13  product increases duration of the common cold.  ProPhase's representations are false, misleading,

14  and reasonably likely to deceive the public.

15    2.    Defendants conveyed and continue to convey their deceptive claim about the Cold-

16  EEZE products through a variety of media, including the Internet, point-of-sale displays, and on the

17  Cold-EEZE labels and labeling.   The false and deceptive message appears prominently and

18  conspicuously on every Cold-EEZE package.

19    3.    Through their advertising, Defendants have conveyed one message: Cold-EEZE, with

20  its proprietary zinc formulation, is proven to significantly reduce the severity and duration of the

21  common cold.

22    4.    Defendants' advertising and marketing campaign is designed to cause consumers to

23  buy Cold-EEZE as a result of this deceptive message and the complete lack of any disclosure that

24  no competent and reliable scientific evidence exists to substantiate the claim that Cold-EEZE will

25  "shorten your cold" -- let alone "cut your cold nearly in half." Defendants' deceptive marketing and

26  advertising campaign has succeeded.  Defendants spent $1.4 million the first six months of this year

27  advertising this message to consumers, and almost double that during the same period in 2009.

28

1    Defendants tout Cold-EEZE as the "#1 recommended zinc cold remedy for the past 10 years."

2    Cold-EEZE can be purchased in thousands of food, drug and warehouse stores across the country

3    and consumers purchase millions of units each year for the purpose of reducing the duration and

4    severity of the common cold symptoms. In fact, Defendants reported $9.1 million in net sales for

5    the three months ending December 31, 2009, derived principally from their Cold-EEZE products.

6          5.      Plaintiff brings this action on behalf of himself and other similarly situated consumers

7    in the United States to halt the dissemination of this false and misleading advertising message,

8    correct the false and misleading perception it has created in the minds of consumers, and obtain

9    redress for those who have purchased Cold-EEZE. Plaintiff alleges violations of the Consumers

10   Legal Remedies Act, the Unfair Competition Law, and Breach of Express Warranty created by

11   Defendants' advertising, including false labeling.

12                              **JURISDICTION AND VENUE**

13         6.      This Court has jurisdiction under 28 U.S.C. §1332(d) in that Plaintiff brings this

14   action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, the amount in

15   controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff

16   and certain members of the Plaintiff class are citizens of different states from the Defendants. With

17   regard to the jurisdictional amount Defendants reported $9.1 million in net sales for the three

18   months ending December 31, 2009 derived principally from their Cold-EEZE products.

19         7.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2), because Defendant

20   ProPhase conducts business in this District; certain acts giving rise to the claims asserted in this

21   Complaint occurred within this District; and the illegal actions of Defendants, as alleged in this

22   Complaint, caused damage to Plaintiff and numerous Class Members within this District.

23                                  **THE PARTIES**

24         8.      At all times relevant to this matter, Plaintiff resided and continues to reside in Simi

25   Valley, California. During the Class period and in this judicial district, Plaintiff was exposed to and

26   saw Defendants' claims by reading the product package, purchased Cold-EEZE lozenges in reliance

27   on these claims, and suffered injury in fact and lost money as a result of the unfair, deceptive,

28

1   misleading and unlawful acts described herein by paying money for a product that did not provide

2   the advertised benefits.

3       9.      Defendant ProPhase Labs, Inc. ("ProPhase") is organized and existing under the laws

4   of Nevada, with its headquarters and principal place of business in Doylestown, Pennsylvania.

5   Prior to May 6, 2010, ProPhase operated as The Quigley Corporation ("Quigley").  ProPhase has

6   and is engaged in the manufacture, distribution, marketing and sale of over-the-counter cold remedy

7   products to consumers through national chain, regional, specialty and local retail stores.   Its

8   principal product is Cold-EEZE , a zinc gluconate glycine product that it claims has been proven in

9   clinical studies to reduce the duration and severity of the common cold symptoms by nearly half.

10      10.     Defendant Theodore W. Karkus, a resident of New York, is Chairman of the Board

11  of Directors, Chief Executive Officer and shareholder of Defendant ProPhase.  Defendant Karkus

12  managed, directed and approved the conduct of Defendant ProPhase.

13      11.     Defendant Robert V. Cuddihy, Jr., a resident of New Jersey, is Executive Vice

14  President, Chief Operating Office and Interim Chief Financial Officer of Defendant ProPhase.

15  Defendant Cuddihy managed, directed and approved the conduct of Defendant ProPhase.

16      12.     Defendants ProPhase, Karkus and Cuddihy acted in concert and are jointly and

17  severally liable for the misconduct alleged herein. They are also co-participants in the unlawful

18  business practices alleged below.

19                          **FACTUAL ALLEGATIONS**

20      13.     ProPhase was formed in 1989 when it was known as The Quigley Corporation, by

21  Guy J. Quigley and Charles A. Phillips, two businessmen who had no prior experience developing,

22  marketing, or selling cold remedy products.  Quigley initially marketed and sold an all-natural,

23  high-energy bar called "Quigley Alpha Nutri-Bar." Disappointing sales caused Quigley to diversify

24  into the sale of cold remedy products.   In May 1992, Quigley acquired the worldwide

25  representation, manufacturing and marketing rights to the Cold-EEZE products and began selling

26  them nationwide in 1994.

27

28

14.     Cold-EEZE is an over-the-counter cold remedy product sold in the form of a hard candy lozenge or sugar free tablet.  The lozenges are sold in "original" and six other flavors.  The tablets are sold in four sugar free flavors.  Regardless of flavor or sugar-content, each of the Cold-EEZE products contains the deceptive representation at issue.

15.     Since its launch, Defendants have consistently conveyed the message to consumers throughout the United States that Cold-EEZE, with its proprietary zinc gluconate formulation, is "clinically proven to cut your cold nearly in half." This message is not substantiated and is factually baseless.

16.     There are very few properly constructed studies on the effect, if any, zinc plays in reducing the duration of the common cold.  Most of the studies involving zinc are poorly designed, lack relevant endpoints and do not meet well-established scientific standards for clinical evaluation.  No legitimate studies have shown that products or ingredients similar to those contained in Cold-EEZE are an effective treatment for the common cold, including shortening the duration of the common cold by nearly half.

## DEFENDANTS' ADVERTISING CLAIMS ABOUT COLD-EEZE

17.     On the packaging of its Cold-EEZE products and in other advertisements, including its website, Defendants prominently claim that Cold-EEZE, with its proprietary zinc gluconate formula, is "clinically proven" to reduce the duration of the common cold "nearly in half" and significantly reduce the severity of common cold symptoms.  The product packaging states:

- Shorten your cold!  Get better faster!

- Clinically proven to cut your cold nearly in half.

- Two clinical studies have shown: Cold-EEZE proprietary formula reduces the duration and severity of colds by 42% or 3 to 4 days.

- Clinically proven to reduce the duration of the common cold.

- Reduces the severity of cold symptoms: cough, sore throat, stuffy nose, sneezing, post-nasal drip and/or hoarseness.

18.     Despite inadequate testing and no proof that Cold-EEZE is an effective cold remedy, Defendants state that "Cold-EEZE has been studied and shown to be effective in adolescents and adults (aged 12 years and over)."

19.     The packaging and labeling on the hard candy lozenge and sugar free tablet forms of Cold-EEZE are substantially the same and each include the false message concerning Cold-EEZE's purported proven ability to reduce the duration of the common cold.

20.     The label on the front of each package of Cold-EEZE appears substantially as follows:



21.     The label on the back of each package of Cold-EEZE appears substantially as follows:



22.     The left and right side panels of each package are identical and appear substantially as follows:



23.     Defendants did not and do not have substantiation for these statements, which are false and misleading and reasonably likely to deceive the average person.

24.     Defendants repeat their false and deceptive statements on their webpage, www.coldeeze.com. This website is accessible to the general public. Defendants' advertisements promote this website, which is also prominently listed on the product label.  Without sufficient testing or adequate substantiation, Defendants state:

**What is Cold-EEZE?**

- We all know that there is no cure for the common cold, but Cold-EEZE (zinc gluconate glycine) lozenges shorten the life cycle of a cold and restore health faster.  Treating with Cold-EEZE can help you get back to your normal routine faster.
- Cold-EEZE reduces the duration and symptoms of the common cold including cough, stuffy nose, sore throat, sneezing, post-nasal drip and hoarseness.
- The Cold-EEZE proprietary (zinc gluconate glycine) formula is believed by researchers to interfere with the cold virus' (rhinovirus) ability to reproduce.
- The Cold-EEZE zinc gluconate glycine (ZIGG™) was shown to be effective in reducing the duration of the common cold by up to 42% in multiple clinical studies.  This could reduce your cold by up to 3 to 4 days.

**Cold-EEZE vs. Competitors**

Not all Natural Homeopathic Cold Remedies and Dietary Supplements are created equal.

Because Cold-EEZE has peer reviewed and published clinical studies that show the powerful and safe effects of its proprietary formula, Pharmacists have made it the #1 recommended zinc cold remedy for the past 10 years.

You should choose products that have demonstrated clinical efficacy studies to make sure that you are using a product that has been shown to work.

The Cold-EEZE formula has more clinical research than other homeopathic cold remedies and dietary supplements.  In fact, unlike Cold-EEZE, some products have no studies whatsoever.

**How The Cold-EEZE Zinc Formula Works.**

- 80% of colds are due to the rhinovirus.
- Rhinoviruses have a negative (-) molecular charge.
- Zinc Icons have a positive (+) molecular charge.
- Zinc ions are attracted to the rhinovirus like metal filings to a magnet.
- They keep the rhinovirus from effectively reproducing.

Other forms of zinc are sold as dietary supplements to aid the immune system.  However, only ionizing zinc delivered to the mucosal surface have shown positive clinical results.  Because of its unique formula, Cold-EEZE delivers 92% +/- (3%) of its available zinc ions to the mucosal surface.

*See* www.coldeeze.com.

25.     Like its packaging and labeling, Defendants' Cold-EEZE website prominently claims that Cold-EEZE is proven to work.  For example, the homepage of the website states:

- *Do your friends a favor…**Share your Cold-EEZE.*** Tell them it's ***clinically proven*** to ***shorten colds*** by nearly half!

- Do your friends a favor…Share your Cold-EEZE.  Tell them that some natural remedies are just hot air, but Cold-EEZE is **proven to work**.

- Do your co-workers a favor…Share your Cold-EEZE.  Tell them Cold-EEZE **lasts longer** in your mouth to shorten your cold fast!

26.     Attached as Exhibit A is a collection of Defendants' packaging, labeling, and webpages which each contain the deceptive messages.

## DEFENDANTS' OWN SUBSTANTIATION DEMONSTRATES THE FALSITY OF ITS CLAIMS

27.     On the product label, Defendants deceptively convey the marketing message that Cold-EEZE's efficacy is substantiated by "two clinical studies" which it represents as "independent

double blind studies" conducted by Mossad, *et al.* in 1996 (the "Mossad Study") and Godfrey, *et al.* in 1992 (the "Godfrey Study"). Prominently displayed throughout its website, Defendants falsely represent that Cold-EEZE is "proven to work" in clinical studies and contains a "Proven Zinc Formula." On its "Cold-EEZE Clinical Studies" webpage, ProPhase identifies the Mossad and Godfrey studies also referenced on the product label, in addition to 5 other purported "peer reviewed and published clinical studies that show the powerful and safe effects" of Cold-EEZE.

28.     None of these studies constitute adequate substantiation for Cold-EEZE's cold remedy claims. Moreover, several studies that actually tested Cold-EEZE, including one partially funded by Defendants, concluded that Cold-EEZE does not alleviate the symptoms of or reduce the duration of common colds. These studies, detailed below, are not provided on the Cold-EEZE website.

29.     There is a widespread consensus within the legitimate scientific community concerning proper research and testing that must be conducted to substantiate a claim made for a given effect ascribed to a cold remedy product. Competent and reliable clinical studies require, *inter alia*, the following:

> ***Validated case definition.*** The validated case definition provides signal quality and reduces noise by ensuring that the cases have the disease of interest based on validated criteria for diagnosis. "Signal quality" refers to the accurate measurement of an event (signal) of interest – in this case, cold symptoms – without dilution of the signal by similar events, such as respiratory symptoms due to other causes, such as allergy or respiratory tract irritants that would represent "noise."
>
> ***Quantifiable hypothesis.*** A quantifiable hypothesis provides an end point, which allows for the calculation of sample size relative to defined statistical power. This addresses the problem of chance.
>
> ***Sample size calculation.*** Given a quantifiable hypothesis, calculations should be performed to assure that a study has a large enough sample size to meet a predetermined statistical power. This also addresses the problem of chance.
>
> ***Randomized assignment.*** Random assignment of cases to the experimental and control groups is necessary to ensure that study populations are as similar

as possible.  This reduces known and unknown biases that may affect the validity of the results.

***Double blinding.***  Unblinded studies are biased toward finding a treatment effect.  Data should be supplied to show that blinding was not only attempted but also was effective.  This is especially important for zinc preparations, which characteristically have a "medicinal" taste and often lead to nausea.

***Proof of blinding.***  A separate, controlled experiment to test the adequacy of blinding should ideally be performed before the clinical trial is conducted. When performed after the study, it is acceptable only in a negative study.  In a positive study, post study proof of blinding is unacceptable, because there is no way to determine whether judgments were made on the basis of a bias or a true therapeutic effect.

***Measurement of compliance.***  Signal quality is also dependent on the degree of compliance of subjects.  Compliance should be monitored to evaluate the amount of bias that could result from subjects' failure to take study preparations as directed.

***Measurement of dropout rate.***  Dropout rates should be measured to evaluate whether statistical power was maintained.

***Intent-to-treat analysis.***  Results should be analyzed by the intent-to-treat principle to maintain randomization and statistical power.  Scores from all cold symptoms included in the research protocol should be reported.

***Methods of statistical analysis.***  A description of the methods of statistical analysis should be provided to assess the appropriateness of the tests applied to the data.

***Measurements of probability.***  This information should be provided to evaluate the precision of the findings.

*See* Thomas J. Caruso, *et al.*, *Treatment of Naturally Acquired Common Colds With Zinc: A Structured Review*, CID 2007:45 569-74 (Sept. 1) ("Caruso Study").

30.     In truth, the "two clinical studies" on the product label upon which Defendants base their claim suffer from several material deficiencies including no proof of blinding, no quantifiable hypothesis, no microbiological common cold diagnosis, and no intent-to-treat analysis, all of which are necessary components of a competent and reliable clinical or scientific trial – *e.g.*, one capable of providing substantiation for Defendants' claims.

31.     The purported clinical studies upon which Defendants rely and direct consumers for substantiation of their claims are not properly constructed clinical studies and do not constitute clinical substantiation.  In fact, these studies provide no legitimate claim substantiation at all, and do not in any way indicate that the product does what Defendants claim.  The studies did not even test a Cold-EEZE product.  The Godfrey Study[1] had no quantifiable hypothesis, no sample size calculation, no intent-to-treat analysis and no proof of blinding.  For example, the subjects in the Godfrey Study consumed a dose of 23.7 mg of zinc gluconate glycine ("ZGG") about eight times per day.  Discounting any post-ingredient mixing, there is only 13.3 mg of ZGG in Cold-EEZE.  Proof of blinding also was lacking in the Mossad Study.[2]  *See* Caruso Study at 571-72.  Given that the zinc lozenges have a distinct metallic aftertaste, no proof of blinding is particularly troubling and further undermines the credibility of the study.  *See* Caruso Study at 572.  Indeed, the Mossad Study reported that many patients reported that the "lozenges had an aftertaste."  Defendants also acknowledge that "a metallic taste is [a] common" side effect of the Cold-EEZE products.  *See* www.coldeeze.com.  The Mossad Study itself identified seven additional "limitations" of its study.

32.     These two purported substantiating studies are not competent, reliab*e*, nor scientifically valid clinical studies.  Further undermining the credibility of the studies is that they also are not "independent" as Defendants state on the Cold-EEZE label.  One of the authors of the Mossad Study is Dr. Michael L. Macknin who had a financial interest in Quigley when the study results were published, a fact not revealed until after the study was published.  The principal author of the other study, John C. Godfrey, owned *the* patent on the zinc gluconate glycine active ingredient in Cold-EEZE and had sold the exclusive distribution rights to the formula to Defendants in exchange for a 3% royalty and a 2% consulting fee based on Cold-EEZE sales.

---

[1] Godfrey J.C., Conant Sloane B. Smith D.S., Turco J.H., Mercer N., Godfrey N.J., *Zinc Gluconate and the Common Cold: A Controlled Clinical Study*, J. Int. Med. Res. 1992; 20:234-46.
[2] Mossad S.B., Macknin J.L., Medendorp S.V., Mason P., *Zinc Gluconate Lozenges for Treating the Common Cold: A Randomized, Double Blind, Placebo-Controlled Study*, Am. Intern. Med. 1996; 125: 81-8.

33.     The 5 additional purported substantiating studies Defendants identify on their website suffer from even greater shortcomings.   The first 3 (of which the third is just a summary of the second study) are authored by the same group of conflicted researchers, but included school aged children.   The studies were not randomized, placebo controlled, nor double blinded.   One study (including the summary, which Defendants count as a separate study) was retrospective.   Howell, McElroy, *et al.* 2003; McElroy, Miller 2002; McElroy, Porter, *et al.* 2009.[3]   The other two studies (one is simply a summary of the other) relate solely to whether the sugar free Cold-EEZE tablets adversely affect the glucose levels in diabetic patients and have no bearing on the products' efficacy.[4]   The study is entitled "Cold Remedy For Persons with Diabetes, or Concerns with Glycemic Control." It does not constitute clinical proof of any tangentially relevant endpoint.

34.     Other studies, not cited on the Cold-EEZE packaging or website, indicate the falsity of Defendants' claims.   For example, in Turner, Cetnarowski, 2000, the authors conducted a

---

[3] An Open-Label, Single Center, Phase IV Clinical Study of the Effectiveness of Zinc Gluconate Glycine Lozenges (Cold-EEZE) in Reducing the Duration and Symptoms of the Common Cold in School-Aged Subjects (/downloads/?filename=Cold-EezeAJTStudyreport.pdf).   Betty Howell McElroy, MD, PA; Shelley Porter Miller, MMS, PA-C; American Journal of Therapeutics, Vol. 10 No. 5, September 2003.

Effectiveness of Zinc Gluconate Glycine Lozenges (Cold-EEZE) Against the Common Cold in School-Aged          Subject:          A          Retrospective          Chart          Review (/downloads/?filename=RetrospectiveAJTMcElroyAndMiller.pdf).   Betty Howell McElroy, MD, PA; Shelley Porter Miller, MMS, PA-C; American Journal of Therapeutics, Vol. 9 No. 6, November 2002.

Zinc Gluconate Glycine (Cold-EEZE) (/downloads/?filenamer=HeritageSynergySummation.pdf). Betty Howell McElroy, MD, PA; Shelley Porter Miller, MMS, PA-C; Tanya Howell, Clinical Research Associate; Synergy Research, October 2009.
[4]   Cold   Remedy   For   Persons   with   Diabetes,   or   Concerns   with   Glycemic   Control (/downloads/?filename=diabetes_study_2001.pdf). From the Diabetes and Glandular Disease Clinic Study, San Antonio, Texas, 2001.

American          Journal          of          Therapeutics (/downloads/?filename=American_Journal_therapeutics_2001.pdf). Sherwyn L. Schwartz, Jerome S. Fischer and Mark S. Kipnes, Sugar-Free Zinc Gluconate Glycine Lozenges (Cold-EEZE) Do Not Adversely Affect Glucose Control in Patients with Type 1 or Type 2 Diabetes Mellitus. American Journal of Therapeutics, Volume 8, Number 4, July 2001. Sherwyn L. Schwartz, Jerome S. Fischer and Mark S. Kipnes.

double-blind, randomized, placebo-controlled study on the effect of zinc treatment on the duration or severity of common-cold symptoms using zinc acetate lozenges, placebo lozenges, and Cold-EEZE lozenges.[5]  The study concluded that Cold-EEZE "had no effect on the duration or severity of symptoms in either the experimental or natural study model" and "zinc compounds appear to have little utility for common-cold treatment."  A second relevant study, Macknin, Piedmonte, *et al.*, 1998, funded in part by Defendants, concluded that zinc gluconate glycine lozenges (the proprietary zinc formulation found in Cold-EEZE) "were not effective in treating cold symptoms in children and adolescents."[6]  In the aforementioned randomized, blinded, and placebo-controlled 249-person study, the authors found that: (1) time to resolve all cold symptoms was identical in the placebo and Cold-EEZE groups; (2) "[t]reatment groups had no significant effect on the time for resolution on any of the individual symptoms;" (3) differences in school absences between the groups was not statistically significant; and (4) slightly more students in the Cold-EEZE group experienced at least one adverse effect than in the placebo group.  The study, ultimately concluded that "[a]dditional studies in all age groups with different dosages and formulations of zinc lozenges and with virologic testing are needed to define what role, if any, zinc has in the treatment of common cold symptoms."

35.     Despite the fact that there are no competent, reliable and scientifically valid clinical studies showing zinc lozenges to be an effective cold treatment, Defendants continue to unequivocally claim that with its proprietary zinc formula, Cold-EEZE is "clinically proven to cut your cold nearly in half."

36.     This is not the first time the Company has made unsubstantiated claims about its Cold-EEZE products.  In 1999, Quigley entered into a Consent Agreement with the FTC to settle FTC charges for unsubstantiated claims made on the QVC cable network that Cold-EEZE could

---

[5]     Turner and Cenarowski, *Effect of Treatment with Zinc Gluconate or Zinc Acetate on Experimental and Natureal Colds*, Clinical Infectious Diseases. 2000; 31:1202-8.
[6]     Macknin, Piedmonte, *et al.*, *Zinc Gluconate Lozenges for Treating the Common Cold in Children: A Randomized Controlled Trial*, JAMA. 1998; 279(24): 1962-1967.

1   prevent colds and reduce the risk of contacting pneumonia, among other things.  Quigley agreed to

2   stop making these representations until such time, if ever, it possessed "competent and reliable

3   scientific evidence" to substantiate the claims.

4       37.     By making unsupported efficacy representations about the Cold-EEZE products,

5   Defendants committed (and continue to commit) consumer fraud, breached their express warranties

6   and, among other things, have engaged (and continues to engage) in unfair, deceptive, and

7   misleading conduct.  Furthermore, in making these efficacy representations about the Cold-EEZE

8   products when Defendants knew that it did not have competent scientific proof to support these

9   claims, Defendants are and were guilty of deception by omission – by failing to disclose the lack of

10  competent scientific proof to support these efficacy claims – which if adequately and properly

11  disclosed would have caused reasonable consumers to not purchase the Cold-EEZE products.

12      38.     By purchasing the Cold-EEZE products, Plaintiff and the Class Members believed or

13  were reasonably likely deceived in some manner by Defendants' representations that the Cold-

14  EEZE products would reduce the duration and severity of your cold.  As described above, the

15  representations were prominently and repeatedly made on all Cold-EEZE packages such that at the

16  point of purchase and at the point of usage purchasers necessarily had to read Defendants' deceptive

17  representations.  Moreover, other than believing that the Cold-EEZE products were proven cold

18  remedies and that they would reduce the severity and shorten the duration of common cold

19  symptoms, there was no other reason for anyone to buy one of these products.  They had no other

20  use.

21      39.     As a result, Plaintiff and the Class Members, along with future purchasers of the

22  Cold-EEZE products, have been or will be damaged in their purchases of these products in that they

23  have been or likely will be deceived into purchasing a product that they have been led to believe has

24  been proven effective when, in fact, it has not.

25                          **CLASS ACTION ALLEGATIONS**

26      40.     Plaintiff brings this class action claim pursuant to Rule 23, 23(b)(2) and 23(b)(3) of

27  the Federal Rules of Civil Procedure.  Plaintiff seeks certification of a Class consisting of:

28

All persons who purchased Cold-EEZE until the date notice is disseminated.

41.     Excluded from the Class are claims for personal injuries arising out of the use of Cold-EEZE, and Defendants' officers, directors and employees and those who purchased Cold-EEZE for the purpose of resale.

42.     Members of the Class are so numerous and geographically dispersed that joinder of all Class Members is impracticable.  Based on reported annual sales of the Cold-EEZE products, it is apparent that the number of consumers of the products would be so large as to make joinder impossible.

43.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

44.     The claims asserted by Plaintiff in this action are typical of the claims of the members of the Class, as the claims arise from the same course of conduct by Defendants, and the relief sought is common.  Plaintiff and Class Members suffered uniform damages caused by their purchase of the Cold-EEZE products manufactured, marketed, and sold by Defendants.

45.     In addition, there are questions of law and fact common to the Class that exist and predominate over questions affecting only individual Class Members.  Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff and the Class Members.  Individual questions, if any, pale in comparison to the numerous common questions that predominate.  Such common questions include but are not limited to:

(a)   Whether Defendants had adequate substantiation for their claims;

(b)   Whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(c)   Whether Defendants' alleged conduct violates public policy;

(d)   Whether the alleged conduct constitutes violations of the laws asserted herein;

(e)   Whether Defendants engaged in false and misleading advertising;

(f)   Whether Plaintiff and Class Members have sustained monetary loss and the proper measure of that loss;

(g)   Whether Plaintiff and Class Members are entitled to restitution, disgorgement of Defendants' profits, declaratory and/or injunctive relief; and

(h)   Whether Plaintiff and Class Members are entitled to an award of compensatory and/or punitive damages.

46.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable.

47.    Plaintiff seeks a constructive trust, and preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiff and Class Members.

48.    Unless a class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiff and proposed Class Members.  Unless a classwide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I

### For Violations of the Consumers Legal Remedies Act – Civil Code 1750 *et seq*.  On behalf of Plaintiff and the Class

49.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

50.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, Civil Code §1750, *et seq.* (the "Act").  Plaintiff is a consumer as defined by Civil Code §1761(d).  The Cold-EEZE products are goods with the meaning of the Act.

51.     Defendants violated and continue to violate the Act by engaging in the following practices proscribed by §1770(a) of the Act in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Cold-EEZE products:

(a)     Representing that [the Cold-EEZE products have]…characteristics…uses [or] benefits…which they do not have….

(b)     Representing that [the Cold-EEZE products] are of a particular standard, quality or grade…if they are of another.

(c)     Advertising goods…with intent not to sell them as advertised.

(d)     Representing that [the Cold-EEZE products have] been supplied in accordance with a previous representation when [they have] not.

52.     Defendants violated and continue to violate the Act by representing through their advertisements the Cold-EEZE products as described above when Defendants knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

53.     Pursuant to §1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.  A copy of the letters are attached hereto as Exhibit B.

54.     Pursuant to §1782(d) of the Act, Plaintiff and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

55.     If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of

written notice pursuant to §1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

56. Defendants' conduct is malicious, fraudulent and wanton, and provides misleading information.

57. Pursuant to §1780(d) of the Act, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in proper form.

## COUNT II

### Unlawful Business Acts and Practices in Violation of California Business & Professions Code Section 17200 *et seq.*, On Behalf of Plaintiff, the General Public and the Class

58. Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth here.

59. Business & Professions Code §17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendants have violated each of these provisions of Business & Professions Code §17200.

60. Defendants have violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code §17200 *et seq.*, Health & Safety Code §110765, 21 U.S.C. §343, by misbranding food products in violation of federal law, and by violating the common law.

61. Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

62. Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business and Professions Code §17200 *et seq.* in that its conduct is substantially injurious to consumers,

offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

63.     As stated in this complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers.  Plaintiff asserts violations of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §17200 *et seq*.

65.     Defendants Karkus and Cuddihy are co-participants in the unlawful business practices set forth above as a result of their management, direction and approval of the conduct of Defendant ProPhase.

64.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

65.     Defendants' claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200.

66.     Defendants' labeling, website and other advertisements, as described herein, also constitute unfair, deceptive, untrue and misleading advertising.

67.     Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members.  Plaintiff has suffered injury in fact and has lost money as a result of Defendant's unfair conduct.

68.     Defendants have thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.

69.     Additionally, pursuant to Business & Professions Code §17203, Plaintiff seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to engage in a corrective advertising campaign.

## COUNT III

### Breach of Express Warranty
### On Behalf of Plaintiff and the Class

70.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

71.     Plaintiff and each member of the Class formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased the Cold-EEZE products. The terms of that contract include the promises and affirmations of fact made by Defendants on their Cold-EEZE product labels and through its marketing campaign, as described above. This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

72.     All conditions precedent to Defendants' liability under this contract has been performed by Plaintiff and the Class.

73.     Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the Cold-EEZE product that could provide the benefits described above.

74.     As a result of Defendants' breach of their contract, Plaintiff and the Class have been damaged in the amount of the purchase price of the Cold-EEZE products they purchased.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the class as requested herein;

B.     Awarding Plaintiff and the proposed Class Members damages;

C.     Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class Members;

D.  Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

E.  Awarding Plaintiff and the Class punitive damages;

F.  Ordering Defendants to engage in a corrective advertising campaign;

G.  Awarding attorneys' fees and costs; and

H.  Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  September 16, 2010

BONNETT FAIRBOURN FRIEDMAN
& BALINT, P.C.

ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602-274-1100
602-274-1199 (fax)

BONNETT FAIRBOURN FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, suite 900
San Diego, CA  92101
Telephone: 619-756-6987
602-274-1199 (fax)
tcarpenter@bffb.com

1   BLOOD, HURST & O'REARDON, LLP
    TIMOTHY G. BLOOD (149343)
2   LESLIE E. HURST (178432)
    THOMAS J. O'REARDON II (247952)
3   600 B Street, Suite 1550
    San Diego, CA  92101
4   Telephone:  619-338-1100
    619-338-1101 (fax)
5
    LAW OFFICES OF CAMERON J.
6     GHARABIKLOU
    CAMERON J. GHARABIKLOU (249189)
7   444 West C Street, Suite 410
    San Diego, CA  92101
8   Telephone:  858/412-0019
    619/568-3341 (fax)
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"





# Drug Facts

## Active ingredient *(per lozenge)* **Purpose**
Zincum Gluconicum 2x (13.3mg)..............................Homeopathic Cold Remedy

## Uses
- to reduce the duration of the common cold
- reduces the severity of cold symptoms: cough, sore throat, stuffy nose, sneezing, post nasal drip and/or hoarseness

## Warnings
**Ask a doctor before use if you**
- are taking monocycline, doxycycline, tetracycline or are on coumadin therapy, zinc treatment may inhibit the absorption of these medicines

Stop use and ask your healthcare practitioner if symptoms persist beyond 7 days.

COLD-EEZE® Lozenges are formulated to reduce the duration of common cold symptoms and may be insufficient treatment for Influenza or Allergies.

If pregnant or breast-feeding, ask a health professional before use.
Keep out of reach of children.

## Directions
- adults and children 12 years and over
- for best results, begin treatment at start of symptoms (within 24-48 hours of onset)
- repeat every 2 - 4 hours as needed until all symptoms subside
- completely dissolve a COLD-EEZE® lozenge in mouth (do not chew)
- recommended daily dosage is 6 lozenges for adults and 4 lozenges for ages 12-17
- children under 12 years of age should consult a health professional prior to use

## Other information
- avoid minor stomach upset - Do not dissolve COLD-EEZE® lozenges on an empty stomach
- avoid citrus fruits or juices and products containing citric acid 1/2 hour before or after taking COLD-EEZE® lozenges as they may diminish product effectiveness, otherwise, drink plenty of fluids
- store in a cool dry place after opening
- gluten-free

## Inactive ingredients
corn syrup, honey, glycine, lemon oil and sucrose.  No artificial colors or preservatives.

---

## # 1 PHARMACIST RECOMMENDED ZINC COLD REMEDY.
### PHARMACY TIMES SURVEY

## CLINICALLY PROVEN TO CUT YOUR COLD NEARLY IN HALF

TWO CLINICAL STUDIES HAVE SHOWN: COLD-EEZE PROPRIETARY FORMULA REDUCES THE DURATION AND SEVERITY OF COLDS BY 42% OR 3 TO 4 DAYS.

THE INDEPENDENT DOUBLE BLIND STUDIES WERE CONDUCTED AT THE CLEVELAND CLINIC AND DARTMOUTH COLLEGE AND PUBLISHED IN PEER REVIEWED JOURNALS.

MOSSAD ET. AL., ANNALS OF INTERNAL MEDICINE VOL. 125, NO 2 JULY 15, 1996 GODFREY ET. AL., JOURNAL OF INTERNATIONAL MEDICINE RESEARCH, VOL 20, NO 3 JUNE 1992

COLD-EEZE IS SAFE TO TAKE WITH MOST OTHER MEDICATIONS. (SEE WARNINGS)

IT DOES NOT AFFECT BLOOD PRESSURE CAUSE DROWSINESS OR LIGHT HEADEDNESS.

FOR MORE INFORMATION LOG ONTO WWW.COLDEEZE.COM



MANUFACTURED AND DISTRIBUTED BY:
THE QUIGLEY CORPORATION
P.O. BOX 1349, DOYLESTOWN, PA  18901
EMAIL: COLDEEZE@QUIGLEYCO.COM
NASDAQ: QGLY

**MADE IN USA**

QUESTIONS? COMMENTS? CALL 1-800-505-COLD
9am - 5pm Eastern

THIS PRODUCT HAS NO EXPIRATION DATE.
DEVELOPED UNDER PATENTS: 4,684,528  4,758,439







Do your **friends** a favor...
# Share your Cold-EEZE®

Tell them that some natural remedies are just hot a
but Cold-EEZE is ***proven to work***.







**NEWS ALERT:**
**Cold-EEZE Not Affected by FDA Advisory for ZICAM® Intra-Nasal Pro**
Read our Frequently Asked Questions >     Read the full press r

*Cold-EEZE is available in these great flavors...*



# Are you a Healthcare Professional?
Get FREE Patient Samples

# Are you lo
## Visit ColdFig
> ColdCast For You
> Health & Wellnes
> Cold & Flu Inforn
> More Product Inf

**Quigley** Copyright © 2009 The Quigley Corporation. All Rights Reserved.

## Do your *friends* a favor...

# Share your Cold-EEZE®



Tell them that some natural remedies are just hot air, but Cold-EEZE is **proven to work.**



Do your **co-workers** a favor...

# Share your Cold-EEZE®

Tell them Cold-EEZE *lasts longer* in your mouth to shorten your cold fast!







## What is Cold-EEZE®?

We all know that there is no cure for the common cold, but Cold-EEZE (zinc gluconate glycine) lozenges are the next best thing. Here's why:
Cold-EEZE lozenges shorten the life cycle of a cold and restore health faster. Treating with Cold-EEZE can help you get back to your normal routine faster. Cold-EEZE reduces the duration and symptoms of the common cold including cough, stuffy nose, sore throat, sneezing, post-nasal drip and hoarseness.
The Cold-EEZE proprietary (zinc gluconate glycine) formula is believed by researchers to interfere with the cold virus' (rhinovirus) ability to reproduce.
The Cold-EEZE zinc gluconate glycine (ZIGG™) was shown to be effective in reducing the duration of the common cold by up to 42% in multiple clinical studies. This could reduce your cold by up to 3 to 4 days.
The Cold-EEZE brand is the #1 pharmacist-recommended zinc cold treatment. It is recommended two-to-one over Zicam. (Source: Pharmacy Times OTC survey — June 2008.)



Cold-EEZE uses natural flavors and has no preservatives or colors. It is non-drowsy, non-agitating and safe for patients with high blood pressure.



Quigley Copyright © 2009 The Quigley Corporation. All Rights Reserved.



## When to take Cold-EEZE®

Cold-EEZE reduces the duration and symptoms of the common cold including cough, stuffy nose, sore throat, sneezing, post-nasal drip and hoarseness.

For best results, Cold-EEZE treatment should be started within 24-48 hours of the start of a cold and used daily until all symptoms resolve. The earlier, the better. Here's how:

Completely Dissolve a Cold-EEZE lozenge in your mouth. Do not chew. Repeat every 2 to 4 hours as needed.

The recommended daily dosage is 6 lozenges per day, which means an 18 count bag/box is a 3 day supply of Cold-EEZE. However, adolescents in a clinical study dissolved 4 lozenges per day and experienced similar results as Adults in previous studies dissolving 6 lozenges.

Cold-EEZE is safe to take with most other medications including other symptom relievers.

Avoid stomach upset — do not dissolve Cold-EEZE lozenges on an empty stomach.

Avoid citrus fruits and juices as well as other products containing citric acid ½ hour before and after taking Cold-EEZE lozenges, as they may diminish product effectiveness.

Zinc may interfere with the absorption of minocycline, doxycycline, tetracycline as well as Coumadin. Ask a Doctor prior to using Cold-EEZE.

**Quigley** Copyright © 2009 The Quigley Corporation. All Rights Reserved.

Cold-EEZE :: What is Cold-EEZE? :: Cold-EEZE® vs. Competitors

Case 2:10-cv-06952-JFW-AGR   Document 1   Filed 09/17/10   Page 32 of 48   Page ID #:671



# Cold-EEZE® vs. Competitors

Not all Natural Homeopathic Cold Remedies and Dietary Supplements are created equal.

Because Cold-EEZE has peer reviewed and published clinical studies that show the powerful and safe effects of its proprietary formula, Pharmacists have made it the #1 recommended zinc cold remedy for the past 10 years.

You should choose products that have demonstrated clinical efficacy studies to make sure that you are using a product that has been shown to work.

The Cold-EEZE formula has more clinical research than other homeopathic cold remedies and dietary supplements. In fact, unlike Cold-EEZE some products have no studies whatsoever.

Cold-EEZE has more available zinc and lasts longer than Zicam Rapid Melts® between doses with a longer dwell time for zinc ions.[1] Click on Cold-EEZE vs. Zicam Rapid Melts (/what_is_cold-eeze/lasts_longer/) to see why this might matter to you.

## See how Cold-EEZE stacks up against the competition:

|  | Cold-EEZE lozenges | Airborne | Zicam Oral | Zicam Nasal |
|---|---|---|---|---|
| Proven Effectiveness | 2 published double blind placebo controlled studies. 2 published Adolescent studies. | No published studies. | No known studies. | 2 published double blind placebo controlled studies. |
| Safety | Safety studies with Geriatric as well as Diabetic patients. | No known safety studies. | No known safety studies. | No known safety studies. |
| Recommendations | #1 Pharmacist recommended zinc treatment since 1998. | None. | None. | #2 Pharmacist Recommended Zinc treatment. |

Zicam® and Zicam Rapid Melts® are registered trademarks of Matrixx Initiatives Inc.

Airborne® is a registered trademark of Airborne Inc.

[1]Unpublished Clinical Study p < 0.0003

Next: Cold-EEZE vs. Zicam Rapid Melts (/what_is_cold-eeze/lasts_longer/)

Quigley Copyright © 2009 The Quigley Corporation. All Rights Reserved.



# How the Cold-EEZE® Zinc Formula Works

This movie explains why the Cold-EEZE zinc formulation binds to the rhinovirus and prevents it from spreading.

## Theory1 of ICAM-Receptor Mechanism in Action



## Cold-EEZE Clinical Study Results

| Placebo | | | | | | 7.6 Days |
|---------|---|---|---|---|---|---|
| Cold·EEZE  4.4 Days | 42% Shorter! | | | | | |
| 1 Day | 2 Days | 3 Days | 4 Days | 5 Days | 6 Days | 7 Days |

## Cold-EEZE had been shown in clinical studies to reduce the duration of the common cold by up to 42%.

80% of colds are due to the rhinovirus.
Rhinoviruses have a negative (-) molecular charge.
Zinc ions have a positive (+) molecular charge.
Zinc ions are attracted to the rhinovirus like metal filings to a magnet.
They keep the rhinovirus from effectively reproducing.
Other forms of zinc are sold as dietary supplements to aid the immune system. However, only ionizing zinc delivered to the mucosal surface have shown positive clinical results. Because of its unique formula, Cold-EEZE delivers 92% +/- (3%) of its available zinc ions to the mucosal surface.
Common pharmaceutical sweeteners such as sorbital, mannitol, ascorbic and citric acids will render it unable to ionize. These pharmaceutical sweeteners are not present in Cold-EEZE but are present in most other zinc products. Check all labels before purchasing!
1. Novick SG, Godfrey JC, Godfrey NJ, Wilder HR. How does zinc modify the common cold? Clinical observations and implications regarding mechanisms of action.Medical Hypotheses. 1996;46:295-302.

Quigley Copyright © 2009 The Quigley Corporation. All Rights Reserved.

# Cold-EEZE® FAQs

Do Cold-EEZE lozenges cause anosmia? close

Cold-EEZE lozenges are dissolved orally. There is no association in the medical literature nor are there any confirmed cases of oral zinc remedies (Cold-EEZE) causing anosmia.

Is Cold-EEZE affected by the FDA recall of Zicam intra-nasal products? close

No. Cold-EEZE is not affected by the recall. The recall only applies to Zicam's intra-nasal products.

Does Cold-EEZE currently make a nasal spray or an intra-nasal product? close

No. Cold-EEZE is only available as a lozenge and as an orally-dissolvable tablet. Cold-EEZE is not currently available as a nasal spray and there are no plans for Cold-EEZE to develop any nasal spray products.

How do I use Cold-EEZE? close

For maximum effectiveness, start taking Cold-EEZE at the first sign of a cold. Symptoms could include one or more of the following: cough, sore throat, stuffy nose, sneezing, post-nasal drip and/or hoarseness. Keep taking Cold-EEZE until all symptoms are gone. Your cold may still last a couple of days after you start taking Cold-EEZE. If Cold-EEZE is stopped too soon, your cold can return to full strength.

To avoid minor stomach upset, do not take Cold-EEZE lozenges, gum or sugar free tablets on an empty stomach. If stomach upset occurs, take Cold-EEZE after you eat something.

Citrus fruits or juices may prevent Cold-EEZE from working properly; therefore, do not eat or drink citrus fruits or juices ½ hour before or after taking Cold-EEZE lozenges, gum or tablets. Otherwise, drink plenty of fluids.

If you experience a fever or stomach ache while taking Cold-EEZE, please call your healthcare professional. This can mean you don't have a common cold virus. Other treatment may be needed.

What are the recommended dosages? close

Lozenge: Completely dissolve a Cold-EEZE lozenge in mouth. Do not chew. Repeat every 2 to 4 hours as needed. The recommended daily dosage of Cold-EEZE lozenge is 6 per day (79.8mg zinc).

Sugar Free Tablets: Completely dissolve one Cold-EEZE Sugar Free tablet in your mouth. DO NOT CHEW OR SWALLOW TABLETS WHOLE. Repeat every hour as needed. Recommended daily dosage is 16 tablets per day.

Can I take other medicines while taking Cold-EEZE? close

While Cold-EEZE can be safely taken with most other medications, including other cough/cold products, you should always inform your healthcare provider that you are taking Cold-EEZE or any other medications. Because zinc is a trace mineral, it has been reported to make doxycycline, minocycline tetracycline as well as Coumadin less effective. It may keep those drugs from absorbing effectively. If you are taking those drugs, your doctor may ask you to wait two hours after ingesting them, before you use Cold-EEZE. Talk to your healthcare provider for more information.

How many grams of carbohydrates are in Cold-EEZE? close

There are 4.5 g carbohydrates and 18 calories in each Cold-EEZE lozenge.

Each Sugar Free Cold-EEZE Lozenge contains 2.24 g of carbohydrates and 9 calories.

Sugar Free Cold-EEZE tablets contain 0 g of carbohydrates and 0 calories.

How much zinc is in a Cold-EEZE lozenge? close

There are 13.3 mg of zinc in each lozenge. There is approximately 4.43 mg of zinc in each sugar free tablet.

What side effects can I expect from Cold-EEZE lozenges? close

Mild stomach upset and nausea are common side effects. Avoid dissolving lozenges on an empty stomach to limit this side effect. A metallic taste is common and indicates that zinc ions are available. Cold-EEZE flavor masking including glycine is designed to minimize this aftertaste, while assuring that lozenges product active zinc ions with sustained dwell time when dissolved.

Is Cold-EEZE safe for people with heart disease and high blood pressure? close

Unlike many decongestants available on the market, Cold-EEZE does not contain any ingredients that have been shown to raise blood pressure and does not include warnings for people with heart disease, diabetes or hypertension.

Should I take antibiotics for my cold symptoms? close

Antibiotics are not an appropriate treatment for colds or flu. According to the CDC, "While antibiotics should be used to treat bacterial infections, they are not effective against viral infections like the common cold, most sore throats and the flu. Overuse of

antibiotics is jeopardizing the usefulness of essential drugs. Decreasing inappropriate antibiotic use is the best way to control resistance."

Preliminary research results indicate that only 3% of individuals (adolescents) who took Cold-EEZE required antibiotics versus 39.3% of individuals (adolescents) who did not take Cold-EEZE as a first line treatment for the common cold. To learn more, visit www.ColdFight360.com.

What are the side effects of Cold-EEZE? close

The most frequent side effect is a temporary change in taste. Because zinc ions need to be available in the mouth, the probability of affecting taste for a short period of time is a possibility. This is normal and temporary. Mild stomach upset is the next most frequent side effect. Dissolving lozenges, tablets or chewing a piece of gum on a full stomach can remedy most cases of stomach upset.

There are no known side effects that pose any significant health risk when Cold-EEZE is used as directed.

Is Cold-EEZE safe to give to my children? close

Cold-EEZE has been studied and shown to be effective in adolescents and adults (aged 12 years and over). Cold-EEZE does not have studies confirming effectiveness and safety for children under the age of 12. As with all treatments for your child, the best source of information is your pediatrician. Consult with your pediatrician before giving your child this or any other medication.

Is Cold-EEZE safe for pregnant women? close

The recommended daily allowance for zinc increases during pregnancy from 12 mg to 25 mg per day. A daily dosage of (6) six Cold-EEZE lozenges delivers 80 mg of elemental zinc. As pre-natal vitamins contain elevated dosages of zinc, and a normal 2000-calorie diet delivers approximately 10mg of zinc per day, the addition of as few as (1) one or (2) two Cold-EEZE lozenges (13.3 mg each) may exceed upper limits for daily intake or approximately 40 mg. If you are pregnant or breast feeding, ask a health professional before use. Your OB/GYN will have guidelines for which cough/cold products he or she recommends. Please refer to their recommendations.

Is Cold-EEZE safe for people with diabetes? close

Sugar-Free Cold-EEZE has been shown in a clinical study not to adversely affect the blood sugar of type 1 and type 2 diabetics. The study was conducted at the Diabetes and Glandular Disease Clinic in San Antonio, Texas. It was published in the Journal of American Therapeutics. To learn more, click here.

Does Cold-EEZE have an expiration date? close

The numbers on the side of your box of Cold-EEZE are lot numbers used specifically for internal tracking purposes and do not indicate a date. Cold-EEZE lozenges are homeopathic and therefore not required to carry an expiration date.

EXHIBIT "B"



**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, PC**

JERRY C. BONNETT
FRANCIS J. BALINT, JR.
C. KEVIN DYKSTRA
ANDREW Q. EVERROAD
JONATHAN S. WALLACK
CHRISTINA L. BANNON
WILLIAM F. KING
ANDREW M. EVANS
KEVIN R. HANGER

WILLIAM G. FAIRBOURN
VAN BUNCH
ELAINE A. RYAN
KATHRYN A. HONECKER
GUY A. HANSON
MANFRED P. MUECKE[1]
TONNA K. FARRAR[2]
TY D. FRANKEL
ERIC D. ZARD

ANDREW S. FRIEDMAN
ROBERT J. SPURLOCK
WENDY J. HARRISON
PATRICIA N. SYVERSON
KIMBERLY C. PAGE
TODD D. CARPENTER[1]
T. BRENT JORDAN[1]
LINDSEY M. GOMEZ

MICHAEL N. WIDENER, Of Counsel

[1] Admitted Only in California
[2] Admitted Only in California, Missouri
and Kansas
[3] Admitted Only in Pennsylvania

September 16, 2010

ProPhase Labs, Inc.
621 Shady Retreat Road
Kells building
Doylestown, PA  18901

Ted Karkus
Chairman, CEO
ProPhase Labs, Inc.
621 Shady Retreat Road
Kells building
Doylestown, PA  18901

Robert V. Cuddihy, Jr.
Executive Vice President, COO
ProPhase Labs, Inc.
621 Shady Retreat Road
Kells building
Doylestown, PA  18901

Re:   Coryell v. ProPhase Labs, Inc., fka The Quigley Corporation, et al.

Gentlemen:

We represent Matthew Coryell and all other consumers similarly situated in an action against ProPhase Labs, Inc., arising out of, *inter alia*, misrepresentations, either express or implied, by ProPhase Labs to Consumers that Cold-EEZE lozenges and sugar free tablets have clinically proven health benefits.

Mr. Coryell and others similarly situated purchased ProPhase's zinc-based Cold-EEZE "cold remedy" products, unaware of the fact that ProPhase's representations were not substantiated by reliable and competent clinical studies. Despite ProPhase's labeling and advertisements, including that Cold-EEZE is "clinically proven to cut your cold nearly in half," Cold-EEZE and its proprietary zinc formulation are not proven to reduce the duration and severity of the common cold either in the scope or duration that is represented. The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action

Complaint, a copy of which is enclosed and incorporated by this reference.

These representations are false and misleading and constitute unfair methods of competition and unlawful, unfair, and fraudulent acts or practices, undertaken by ProPhase with the intent to result in the sale of Cold-EEZE to the consuming public. In fact, these representations do not assist consumers; they simply mislead them.

This practice constitutes a violation of California Civil Code §1770(a) under, *inter alia,* the following subdivisions:

> (5)     Representing that [Cold-EEZE has]. . . Characteristics, . . .uses [or] benefits. . .which [it does] not have.
> * * *
> (7)     Representing that [Cold-EEZE is] of a particular standard, quality or grade, . . . if [it is] of another.
>
> * * *
>
> (9)     Advertising goods. . .with the intent not to sell them as advertised.
>
> * * *
>
> (16)    Representing that [Cold-EEZE has] been supplied in Accordance with a previous representation when [it has] not.

California Civil Code §1770(a)(5)-(16).

ProPhase's claims also constitute violations of California Business and Professions Code §17200, *et seq.,* and a breach of express warranties.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code §1782, we hereby demand on behalf of our client and all others similarly situated in the United States that ProPhase immediately correct and rectify this violation of California Civil Code §1770 by ceasing the misleading marketing campaign and ceasing dissemination of false and misleading information as described in the enclosed Complaint. In addition, ProPhase should offer to refund the purchase price to all consumer purchasers of these products, plus reimbursement for interest, costs, and fees.

Plaintiff will, after 30 days from the date of this letter, amend the Complaint without leave of Court, as permitted by California Civil Code §1782, to include claims for actual and punitive damages (as may be appropriate) if a full and adequate response to this letter is not received. These damage claims also would include claims under already asserted theories of unlawful business acts, as well as the claims under the Consumers Legal Remedies Act. Thus, to

avoid further litigation, it is in the interest of all parties concerned that ProPhase address this problem immediately.

ProPhase must undertake all of the following actions to satisfy the requirements of California Civil Code §1782(c):

1.     Identify or make a reasonable attempt to identify purchasers of the subject products who reside in the United States;

2.     Notify all such purchasers so identified that upon their request, ProPhase will offer an appropriate correction, replacement, or other remedy for its wrongful conduct, which can include a full refund of the purchase price paid for such products, plus interest, costs and fees;

3.     Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all Cold-EEZE purchasers who so request; and

4.     Cease from expressly or impliedly representing to consumers that these products have been clinically proven to reduce the duration and severity of the common cold for all persons when there is no reasonable basis for so claiming, as more fully described in the attached Complaint.

We await your response.

Very truly yours,

Patricia N. Syverson
For the Firm

EXHIBIT "C"

1   BONNETT, FAIRBOURN,
    FRIEDMAN & BALINT, P.C.
2   ANDREW S. FRIEDMAN (AZ005425)
   ELAINE A. RYAN (AZ 012870)
3   PATRICIA N. SYVERSON (CA 203111; AZ 020191)
   2901 N. Central Avenue, Suite 1000
4   Phoenix, AZ  85012-3311
   Telephone:   (602) 274-1100
5   Facsimile:   (602) 798-5825

6   BONNETT, FAIRBOURN,
    FRIEDMAN & BALINT, P.C.
7   TODD D. CARPENTER (234464)
   600 West Broadway, Suite 900
8   San Diego, CA 92101
   Telephone:   (619) 756-6978
9   Facsimile:   (602) 798-5860

10   BLOOD, HURST & O'REARDON, LLP
    TIMOTHY G. BLOOD (149343)
11   LESLIE E. HURST (178432)
    THOMAS J. O'REARDON II (247952)
12   600 B Street, Suite 1550
    San Diego, CA  92101
13   Telephone: 619-338-1100
    619-338-1101 (fax)
14   tblood@bholaw.com
    lhurst@bholaw.com
15   toreardon@bholaw.com

16

17                      UNITED STATES DISTRICT COURT

18                      CENTRAL DISTRICT OF CALIFORNIA

19   MATTHEW CORYELL, on behalf of himself | Case No. _____
    and all others similarly situated,
20   |         **CLASS ACTION COMPLAINT**
21             Plaintiff,
     v. |     **DECLARATION OF PATRICIA N.**
22   |   **SYVERSON PURSUANT TO CALIFORNIA**
              **CIVIL CODE §1780(d)**
23   PROPHASE LABS, INC., fka THE
    QUIGLEY CORPORATION, THEODORE
24   W. KARKUS, an individual, and ROBERT |       **DEMAND FOR JURY TRIAL**
    V. CUDDIHY, JR. an individual,
25            Defendants.
26
27
28

                            Declaration of Patricia N. Syverson
                            Pursuant to Cal. Civ. Code §1780(d)

1    I, Patricia N. Syverson, declare as follows:

2        1.      I am an attorney duly licensed to practice before all of the courts of the State of

3    California.  I am an associate attorney of the law firm of Bonnett, Fairbourn, Friedman &

4    Balint, PC, the counsel of record for plaintiff in the above-entitled action

5        2.      ProPhase Labs, Inc. has done and is doing business in the Central District

6    of California.  Such business includes the marketing and sale of Cold-EEZE products.

7    Furthermore, Plaintiff Matthew Coryell purchased Cold-EEZE in Simi Valley, California.

8        I declare under penalty of perjury under the laws of the State of California that the

9    foregoing is true and correct.

10

11   Executed this 16th day of September 2010, at Phoenix, Arizona.

12

13   Patricia N. Syverson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Andrew S. Friedman (AZ005425)
Elaine A. Ryan (AZ 012870)
Patricia N. Syverson (CA203111, AZ 020191)
Bonnett Fairbourn Friedman & Balint, PC
2901 N. Central Ave., Ste. 1000, Phoenix, AZ 85012
602-274-1100

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW CORYELL, on behalf of himself and all others similarly situated <br><br> v. <br> PROPHASE LABS, INC., fka THE QUIGLEY CORPORATION, THEODORE W. KARKUS, an individual, and ROBERT V. CUDDIHY, JR. an individual <br>        DEFENDANT(S). | CASE NUMBER <br><br> CV 10 6952 -JFW (AGRx) <br><br><br> SUMMONS |

PLAINTIFF(S)

TO:   THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
Patricia N. Syverson _____, whose address is:

Bonnett Fairbourn Friedman & Balint, PC
2901 N. Central Ave., Ste. 1000
Phoenix, AZ 85012

an answer to the ☒ complaint ☐_____ amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within 21 days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

Dated: 1 7 SEP 2010        By: MARILYN DAVIS
                                      Deputy Clerk

                                      (Seal of the Court)

CV-01A (01/01)                    SUMMONS

COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>MATTHEW CORVELL, on behalf of himself and all others similarly situated | DEFENDANTS<br>PROPEASE LABS, INC., fka THE QUIGLEY CORPORATION,<br>THEODORE W. KARKUS, an individual, and ROBERT V.<br>CUDDIHY, JR. an individual, |
|---|---|
| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):<br>Ventura County | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Bonnett Fairbourn Friedman & Balint, PC<br>2901 N. Central Ave., Ste. 1000<br>Phoenix, AZ 85012<br>602-274-1100 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☑5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No    ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Civil Code §1750; Cal. Bus. & Prof. Code §17200

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY | TORTS PERSONAL INJURY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 210 Land Condemnation | ☐ 310 Airplane | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 220 Foreclosure | ☐ 315 Airplane Product Liability | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 230 Rent Lease & Ejectment | ☐ 320 Assault, Libel & Slander | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 240 Torts to Land | ☐ 330 Fed. Employers' Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 245 Tort Product Liability | ☐ 340 Marine | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 290 All Other Real Property | ☐ 345 Marine Product Liability | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veteran) | | ☐ 350 Motor Vehicle | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | | ☐ 355 Motor Vehicle Product Liability | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | | ☐ 360 Other Personal Injury | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 190 Other Contract | | ☐ 362 Personal Injury-Med Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | | ☐ 365 Personal Injury-Product Liability | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☑ 890 Other Statutory Actions | ☐ 196 Franchise | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | | | | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | | | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | | | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | | | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | | | ☐ 465 Other Immigration Actions | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**  Case Number:      **CV10 6952**

CV-71 (07/05)                      CIVIL COVER SHEET                      Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

VIII(b).  **RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No   ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

Ventura County

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.

State of Pennsylvania

**List the California County,** or State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

Ventura County

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _~~signature~~_                         Date  9-16-10

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's disability insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Alicia G.  Rosenberg.

The case number on all documents filed with the Court should read as follows:

### CV10- 6952 JFW (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.